# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES E. QUINN,

        Petitioner,    :    Case No. 3:19-cv-074

- vs -    District Judge Thomas M. Rose
    Magistrate Judge Michael R. Merz

NORMAN ROBINSON, Warden,
  London Correctional Institution

        Respondent.    :

## DECISION AND ORDER

This habeas corpus case is before the Court on Petitioner's Motion to Stay (ECF No. 42). Respondent opposes the Motion (ECF No. 43) and Petitioner has filed a reply in support (ECF No. 48).

**Litigation History**

Petitioner was indicted by a Clark County grand jury on December 16, 2013, and charged with domestic violence, kidnapping, abduction, and witness intimidation (Indictment, State Court Record, ECF No. 10, Ex. 1). He was convicted by a jury and sentenced to an aggregate twenty years in prison. Represented by new counsel, he appealed to the Ohio Second District Court of Appeals, but that court affirmed *State v. Quinn*, 2016-Ohio-139 (Ohio App. 2nd Dist. Jan. 15, 2016), appellate jurisdiction declined, *State v. Quinn*, 145 Ohio St.3d 1467 (2016).

On April 12, 2016, Quinn timely filed a *pro se* Ohio App.R. 26(B) application to reopen

1

his direct appeal to claim ineffective assistance of appellate counsel. The Second District granted the application "limited to the issue regarding a potential error in the jury selection process" and appointed new counsel which the court then removed at Quinn's request to proceed *pro se*. The Second District then again affirmed the conviction. *State v. Quinn* 2017-Ohio-7000 (Ohio App. 2nd Dist. Jul. 28, 2017), appellate jurisdiction declined, 151 Ohio St.3d 1457 (2017).

On July 18, 2014, Quinn filed a motion for new trial which the trial court denied ten days later. The Second District affirmed. *State v. Quinn*, 2016-Ohio-140 (Ohio App. 2nd Dist. Jan. 15, 2016), appellate jurisdiction declined, 145 Ohio St.3d 1477 (2016).

On February 17, 2015, Quinn filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. The Court of Common Pleas denied relief and Quinn appealed. Finding that the trial court had failed to make the required findings of fact and conclusions of law, the Second District remanded. After the trial court entered the required findings, the Second District again affirmed. *State v. Quinn*, 2017-Ohio-8107 (Ohio App. 2d Dist. Oct. 6, 2017), appellate jurisdiction declined, 152 Ohio St. 3d 1424 (2018).

Quinn filed a second motion for new trial on August 3, 2016, which the trial court denied. That decision was affirmed. *State v. Quinn,* 2018-Ohio-5279 (Ohio App. 2d Dist. Dec. 28, 2018), appellate jurisdiction declined, 155 Ohio St.3d 1407 (2019).

Quinn filed is *pro se* Petition in this Court March 6, 2019, pleading the following grounds for relief:

> **GROUND ONE**: My rights to Confrontation and cross-examination were violated when the trial court unreasonably restricted my ability cross-examine a key State's witness, denying my right to Due Process and Fair Trial. (sic)
>
> **Supporting Facts:** Defense counsel attempted to cross-exam the accusing witness regarding a prior charge of domestic violence between the accusing witness and the Defendant after the trial court permitted the State to address the charge on direct. The trial court

refused to permit defense counsel to question the accusing witness regarding this charge or question her credibility and motivation. Had counsel been permitted to cross-exam the witness, the jury would have taken a very different view of her testimony. The defense also could not properly defend themselves from the evidence put forth by the State.

**GROUND TWO**: I was denied the effective assistance of trial counsel as guaranteed by Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts**: Trial counsel rendered ineffective assistance of counsel when he failed to capitalize on the fact that a key State's witness – and the only disinterested eyewitness – told the jury the Petitioner was not the man he saw with the kidnap victim and the alleged victim identified her assailant as driving a different model and color vehicle than what was seen on video. The State claimed Petitioner was driving a white station wagon and counsel should have continued the trial or taken other measures to investigate the white station wagon and its contents, seen on the video, after Petitioner was not identified as the assailant and was alleged to be driving a tan sedan.

**GROUND THREE**: I was denied Due Process of Law and a Fair Trial when the trial court refused to dismiss two potential jurors for cause even after they admitted that they could not be fair and impartial.

**Supporting Facts**: Juror Peters stated during voir dire that he was unable to be fair and impartial and he was never rehabilitated by the prosecution. Defense counsel moved to have the juror struck for cause and the trial court refused to remove the juror for cause. Juror Melchi was a Deputy Sheriff who indicated that he was familiar with the Defendant. Deputy Melchi also indicated that he knew the judge, the prosecutors, the lead detective, all of the police officers testifying on behalf of the State, as well as the Defendant. The trial court abused its discretion and intentionally misapplied the law, forcing Petitioner to unnecessarily use peremptory challenges and all peremptory challenges were exhausted.

**GROUND FOUR**: Petitioner was denied Due Process, a Fair Trial, and the Compulsory Process when the State intentionally withheld law enforcement reports and information that were favorable to the Defense.

**Supporting Facts:** The State withheld and refused to disclose during discovery four police reports compiled to Clark County Sheriff's Office, one which was authored by Deputy Melchi – a potential juror. The State also failed to produce law enforcement reports that would have alerted the defense to the potential location of the recovered vehicle which was the alleged crime scene and it would have permitted

the defense to examine the contents of the recovered vehicle, which contained exculpatory evidence. These reports were withheld in bad faith and could have lead (sic) to more exculpatory evidence being discovered. The failure to disclose the reports also provided the State with a tactical advantages. (sic) The reports and accompanying information showed the investigation was done in bad faith, it was shoddy, and would have allowed the jury to question the probative value of certain physical evidence. The vehicle was later destroyed with exculpatory evidence still in the vehicle. The car itself contained, and was potentially useful evidence that the State failed to process in bad faith. The withholding of those reports denied defense counsel the opportunity to examine the vehicle and its contents including the opportunity to obtain fingerprints and other exculpatory evidence from the vehicle. The undisclosed reports revealed favorable witnesses, this violated the Petitioners (sic) compulsory process rights and denied him witnesses in his favor. This also revealed that a member of the jury pool was an investigating officer in the case, a fact deliberately withheld from the defense that denied the Petitioner a fair jury selection process and violated the Petitioner's right to exercise challenges for cause, peremptory challenges, or to not use any challenges at all. Defense counsel would have asserted a different defense had the reports and information concerning the destruction of the white station wagon been disclosed. There was impeachment evidence and witnesses withheld.

**GROUND FIVE:** Petitioner received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

**Supporting Facts:** Trial counsel failed to interview two witnesses who were on the witness list and possessed exculpatory and exonerating information. Counsel also failed to investigate any of the alleged crime scenes including the house, the car, or the bridge even after being specifically asked to do so. The car had exonerating evidence in the vehicle, the bridge was closed at the time of the alleged offense, and the door in the home that was alleged to be broken was not in fact broken. Any one of these facts, standing alone or collectively, would have resulted in a different verdict if presented to the jury.

**GROUND SIX**: Petitioner was denied Due Process of Law and a Fair Trial when the State failed to disclose a police report wherein the victim told police at the hospital that she did not know who assaulted her.

**Supporting Facts**: The victim in this case told a Deputy Sheriff at the hospital that she did not know who assaulted her. The Deputy then threatened her with criminal charges if she changed her story and failed to disclose the exculpatory statement to the defense.

(Petition, ECF No. 1 PageID 5-13).

Quinn remained *pro se* in this case until October 28, 2019, when Attorney John Gonzales entered his appearance (ECF No. 25).  The reply pleading in this case was initially due September 11, 2019, but Petitioner has now obtained four extensions of time to do so and the most recent extension does not expire until June 1, 2020.  Instead counsel sought to expand the record to add two compact discs (Motion, ECF No. 30) which the Court allowed on a finding that they had been produced to defense counsel at trial and thus were part of the state court record in the sense that their consideration here was not prohibited by *Cullen v. Pinholster*, 563 U.S. 170 (2011), even though this Court only occasionally sees state court trial exhibits (Order, ECF No. 38).  Having reviewed the discs, Quinn now moves through counsel to stay the case pending exhaustion of state court remedies (ECF No. 42).

## Analysis

District courts have authority to grant stays in habeas corpus cases to permit exhaustion of state court remedies in consideration of the AEDPA's preference for state court initial resolution of claims. However, in recognizing that authority, the Supreme Court held:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). . . .

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Rhines v. Weber*, 544 U.S. 269, 277-278 (2005). "Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings. *Id*. The Supreme Court also directed district courts to place reasonable time limits on the petitioner's trip to state court and back.

Having examined the two compact discs, Petitioner asserts they contain two documents which should have been disclosed prior to trial but were not, relying on *Brady v. Maryland*, 373 U.S. 83 (1963). The documents are (Exhibit 1) A one-page Springfield Police Department Inter-Office Communication dated December 15, 2013, purportedly authored by an Office Geoff Ashworth (PageID 2055) and (Exhibit 2) A one-page Springfield Police Department Inter-Office Communication dated December 14, 2013 (PageID 2056).

As authority for granting a stay and return to state court, Petitioner relies on *Cunningham v. Hudson,* 756 F. 3d 477, 486 (6th Cir.2014), asserting 1) he has good cause for not previously exhausting his claims 2) the claims in question are not patently meritless, and 3) the petitioner had not been guilty of dilatory litigation practices.

Petitioner admits that Exhibit 1 was revealed to his attorney prior to trial; he claims, however, that he was personally unaware of it (Motion, ECF No. 42, PageID 2047). Petitioner claims the contents of Exhibit 1 are false and seems to be suggesting it was included in discovery to mislead defense counsel into not pursuing an investigation of the white station wagon at issue in the case (ECF No. 42, PageID 2047-48).

If as Petitioner admits Exhibit 1 was produced to defense counsel prior to trial, it cannot be

6

*Brady* material. Counsel suggests something far worse: that it is a manufactured false document intended to mislead defense counsel. Yet the motion is not supported by any testimony from defense counsel that he was in fact misled, that he failed to pursue a reasonable line of investigation because of a document he did not show his client.

As to Exhibit 2, Petitioner claims it shows that the alleged victim had dementia. Not so. What it documents is that someone in the Springfield Police dispatch office advised officers who went to Beverly Quinn's home on December 13, 2013, that she "suffers from Dementia." The source of that supposed information in whatever document the dispatcher was reading from is completely undisclosed. It is unlikely he or she was reading from Ms. Quinn's medical records. In any event, the question of her mental health was explored in some depth at trial. Petitioner had been living with her and certainly would have been alert to any mental health issues and would have (and did) bring them to the attention of his trial counsel.

Given the nature of these two documents, Petitioner has not shown any likelihood that he would succeed on the basis of their presentation in a third motion for new trial or a second petition for post-conviction relief.

Besides the fact that the new *Brady* claim based on these two documents is meritless, there are other bars to renewed motion practice in the Common Pleas Court. Quinn does not satisfy the criteria for a second post-conviction petition because he cannot show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty." There is direct testimony from the victim that would make that burden of proof extremely difficult to meet. While there is no absolute time limit on delayed motions for new trial in Ohio, Petitioner would have great difficulty establishing that these documents were recently discovered. He would have to overcome the fact that his attorney knew of the documents and the attorney's knowledge is imputed to him. He would also have to overcome his admission that he went

7

over the discovery CD with his counsel.  The issues of whether Quinn can satisfy either the Ohio standard for a delayed motion for new trial or the requirements of Ohio Revised Code § 2953.23 for a second post-conviction petition are of course questions of Ohio law on which this Court could defer to the Ohio courts.  In a case where the questions were close it would be inclined to do so.  But it seems to the Magistrate Judge to be a lopsided view of comity to force three Ohio courts to go through that exercise when the outcome does not seem at all doubtful.

In his Reply, Petitioner asserts:

> The actual innocence claim the Petitioner puts forth are [sic] not recategorized and are not based on credibility issues or weight of evidence as the Respondent suggests. (Doc #43, PageID #2066.) The actual innocence claim is based on the alleged victim having dementia and lying about it at trial. (Doc #42, PageID #2051.) That testimony was never corrected by the prosecuting attorney which is a constitutional violation demonstrated in *Napue v. Illinois,* 360 U.S. 264 (1959). (Doc #42, PageID #2050.) The ineffective assistance of counsel claim comes from the same lie told at trial. Counsel failed to impeach that testimony. (Doc #42, PageID #2050-2051.)

(Reply Memo, ECF No. 48, PageID 2075).  But there is no actual innocence claim made in the Petition and the ineffective assistance of trial counsel claim made does not relate to use of these documents.  There is also no *Napue* claim made in the Petition and the fact that the State did not agree with Quinn's assertion that his mother was demented was well known to him and his trial counsel at the time of trial.

The Magistrate Judge makes no finding that Petitioner has deliberately engaged in dilatory litigation tactics.  It seems likely that if Petitioner had thought of the argument he now wishes to make he would have done so earlier because he has remained incarcerated and will do so unless and until he convinces a court that he is entitled to release.  In other words, he has no motive to engage in deliberately dilatory tactics.  On the other hand he has not shown diligence in raising the arguments he now makes.

The Motion to Stay is accordingly DENIED. This ruling is without prejudice to its renewal if the Clark County Common Pleas Court actually grants leave to file a delayed motion for new trial or accepts jurisdiction of a second post-conviction petition. Either of those rulings would indicate a state court willingness to adjudicate Quinn's new claims on the merits, to which this Court would be pleased to defer.

April 23, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge